**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 96-20703
(Summary Calendar)

_____

GTE SPACENET INTERNATIONAL;
THE INSURANCE COMPANY OF THE
STATE OF PENNSYLVANIA,

                                        Plaintiffs-Appellants,

versus

M/V SEA LAND ACHIEVER, ET AL,

                                        Defendants,

RADIATION SYSTEMS, INC; UNIVERSAL
ANTENNAS INC, doing business as
Radiation Systems, Inc

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
For the Southern District of Texas, Houston Division
(92-CV-2285)

_____

January 17, 1997

Before HIGGINBOTHAM, WIENER, and BENAVIDES, Circuit Judges.

PER CURIAM:*

        This is an appeal from the district court's grant of summary judgment dismissing a subrogation claim brought by Plaintiff-Appellant The Insurance Company of the State of Pennsylvania (the Insurer) against Defendant-Appellee Universal Antennas, Inc.

--------

        * Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

(Universal).  The instant suit was initially filed by GTE Spacenet International (GTE) to recover losses resulting from damage to a 32 meter antenna that was manufactured in the United States and transported by sea to Cyprus.  The Insurer furnished a policy of cargo insurance to GTE that did not extend to the fabrication of the antenna or other pre-transport matters but only to such damage as might be incurred in the shipment of the antenna by vessel from the United States to Cyprus.

When GTE requested payment of proceeds from the Insurer under this cargo insurance policy to the extent required to recover the costs of repairing the damaged antenna, the Insurer investigated the claim and determined to its satisfaction that only 80% of the antenna's damage was attributable to its shipment from the United States to Cyprus.  The Insurer concluded that the remaining 20% of the damage was attributable to "pre-shipment conditions including millage and coating problems" allegedly caused by Universal during the fabrication of the antenna in the United States.  As GTE's cargo insurance policy did not cover damage caused by pre-shipment occurrences, the Insurer paid GTE for only 80% of its losses, refusing to pay for the 20% that the Insurer attributed to Universal's pre-shipment acts or omissions.

Despite the facts that (1) its policy covered damage incurred in shipment only, and (2) it reimbursed GTE for only such portion of GTE's damages as the Insurer insisted was transportation-related and refused to pay GTE for fabrication-related damage, the Insurer

2

now argues that it is entitled to recover from Universal by way of subrogation.  In other words, the Insurer is seeking damages not covered by its policy and not paid to its insured.[1]

The first step in our de novo review of the district court's order dismissing the Insurer's claim against Universal is to determine whether the Insurer was ever contractually subrogated to GTE's claims against Universal.  We have carefully evaluated the record on appeal, the arguments of counsel for both parties as set forth in their briefs to this court, and the applicable law, and have concluded that the Insurer was never subrogated to GTE's claims against Universal.

The Insurer insists that its subrogation agreement with GTE is broad enough to encompass any and all rights that GTE may have had to recover for the losses incurred in repairing the damaged antenna, irrespective of whether those losses resulted from damage caused during the antenna's shipment or during pre-shipment operations, or both.  We need only look to the plain language of the subrogation agreement itself to discern the fallacy of that assertion.  The subrogation agreement reads as follows:

> In consideration of this payment [GTE] hereby guarantees that we are the persons <u>entitled to enforce the terms of the contracts of transportation</u> set forth in the bills of lading covering the said property; and we agree that [the Insurer] is <u>subrogated</u> to all of our rights of recovery on account of any and all loss or damage from the

---

[1]  It is undisputed that, in separate settlements, recovery was had from third parties who are unrelated to this claim but were potentially liable for damage incurred in shipment.

3

carriers and from any other vessels, persons, or corporations that may be liable therefore . . . (emphasis added).

We conclude that the Insurer's subrogation agreement with GTE is no broader in scope than was GTE's coverage under its cargo policy. Subrogation is subrogation; it is widely understood to be the right of one who has paid an obligation which another should have paid to be indemnified by the other. Nothing in the subrogation agreement assigns, transfers, or otherwise confers any more extensive rights upon which the Insurer might base its assertion of a claim in GTE's name that is unrelated to the damages visited upon the antenna during its trans-Atlantic shipment, than GTE could have asserted under the cargo policy or against any transportation-related responsible party.

The Insurer reimbursed GTE for only that portion of its loss that the Insurer itself assessed to risks covered by its own cargo policy, i.e., losses attributable to the antenna's transport from the United States to Cyprus. The insurer explicitly excluded coverage for losses that it attributed to Universal's acts or omissions. In return, GTE subrogated the Insurer to nothing greater than GTE's right to recover those transportation-related losses.[2] The expansive reading of the subrogation agreement urged by the Insurer constitutes an overreaching that cannot be justified

---

[2] In an unrelated settlement, GTE subsequently released any right it may have had to recover from Universal for antenna damage attributable to acts or omissions committed by Universal.

4

under any reasonable rule of contractual construction.

The Insurer nevertheless argues that principles of equitable subrogation dictate that we permit its claim against Universal to go forward. The Insurer asserts that its earlier determination that 80% of the antenna's damage was transportation-related was a mistake, and that upon reflection the Insurer is now convinced that all of the damage is attributable to acts or omissions committed by Universal during the antenna's fabrication. Even if we were to accept that as true, the Insurer's payment of proceeds to GTE would not entitle it to bootstrap a claim against Universal into its subrogation rights by way of equitable subrogation. Both GTE and the Insurer are sophisticated parties. The Insurer investigated GTE's cargo policy claim for two years before agreeing to pay 80% of that claim. Presumably at arms length and under no undue pressure, GTE agreed to accept that partial payment and in return to subrogate the Insurer, but only to GTE's right to recover against parties responsible for transportation-related damages. Even after GTE and the Insurer executed that subrogation agreement, the right to recover from Universal for any pre-shipment antenna damage still belonged to GTE, not to the Insurer. The fact that GTE subsequently released its right to recover from Universal does nothing to shift the "equities" in the Insurer's favor; on the contrary, it supports Universal's position that GTE never intended to subrogate its pre-shipment claims against Universal when it executed the subrogation of transportation claims to the Insurer.

5

Our plenary review leads us to the same result that the district court reached:  The Insurer has no right to recover from Universal by way of subrogation.  We need not and therefore do not address the district court's reasoning on this ground or the alternative grounds on which the district court disposed of this case.

For the foregoing reasons, the district court's grant of summary judgment is

AFFIRMED.